**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| **CASEY MINOR** and **ALEXIS YARBROUGH**, individually and on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>**THE PNC FINANCIAL SERVICES GROUP, INC.**,<br><br>Defendant. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiffs, CASEY MINOR and ALEXIS YARBROUGH ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendant, THE PNC FINANCIAL SERVICES GROUP, INC. ("Defendant"), and state as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, among other laws.

2.      According to its 2017 Form 10-K (attached hereto as Exh. A), Defendant is "one of the largest diversified financial services companies in the United States. We have businesses engaged in retail banking, including residential mortgage, corporate and institutional banking and asset management, providing many of our products and services nationally. Our primary geographic markets are located in 19 states in the Mid-Atlantic, Midwest and Southeast." *Id*., at 2.

3.      Defendant's retail banking segment "provides deposit, lending, brokerage, insurance services, investment management and cash management products and services to consumer and small business customers within our primary geographic markets." *Id*.

4.      In order to service its consumer and small business customers, Defendant employs hourly, nonexempt call center employees (referred to herein as "Customer Service & Support Representatives" or "CSRs") to take inbound calls to provide customer service support to those who contact the PNC Customer Care Center (call center).

5.      Defendant employs these CSRs, including Plaintiffs, in multiple call center facilities (referred to as PNC Customer Care Centers) located throughout the United States, including Kalamazoo, Michigan and Pittsburgh, Pennsylvania.

6.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, it issued Fact Sheet #64 (attached hereto as Exh. B) to alert call center employees to some of the abuses that are prevalent in the industry.

7.      One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

8.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

9.      Defendant requires its CSRs to work a full-time schedule, plus overtime. However,

Defendant does not compensate CSRs for all work performed; instead, Defendant requires its CSRs to perform compensable work tasks before and after their scheduled shifts and during their unpaid meal periods, but trains and instructs its CSRs not to record this time on their electronic timesheets. This policy results in CSRs not being paid for all time worked, including overtime.

10.     In the course of performing their job responsibilities, Defendant's CSRs use multiple computer networks, software programs, applications and phone systems. The time CSRs spend booting up and logging into these programs and applications before and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSRs' work, and they cannot perform their jobs effectively without them.

11.     Defendant's CSRs perform the same basic job duties and are required to use the same or similar computer programs, software programs, applications and phone systems.

12.     The individuals Plaintiffs seek to represent in this action are current and former CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

13.     Defendant knew or could have easily determined how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work, but did not.

14.     Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

15.    This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

16.    Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

17.    Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

18.    Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

19.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

20.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

21.    This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Michigan and employs individuals, including Plaintiffs, within the state of Michigan.

22.      Personal jurisdiction also applies to Defendant because Defendant has purposefully availed itself of the privilege of conducting activities in the state of Michigan and has established minimum contacts sufficient to confer jurisdiction over it; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

23.      Venue is proper in the Western District of Michigan because Defendant employs CSRs in this District, and a substantial portion of the events forming the basis of this suit (including implementation of the illegal pay practices alleged in this litigation) occurred in this District.

## INTRADISTRICT ASSIGNMENT

24.      Defendant employed Plaintiffs at its PNC Customer Care Center in Kalamazoo County, Michigan. Therefore, this action is properly assigned to the Southern Division.

## PARTIES

25.      Plaintiff CASEY MINOR ("Plaintiff Minor") is a Michigan resident who worked for Defendant as a CSR at its PNC Customer Care Center in Kalamazoo, Michigan from July 2015 to August 2018. Defendant compensated Plaintiff Minor through the payment of an hourly wage, most recently at the rate of $15.86 per hour, plus nondiscretionary incentive pay. Plaintiff Minor signed a consent form to join this collective action lawsuit, attached hereto as Exh. C.

26.      Plaintiff ALEXIS YARBROUGH ("Plaintiff Yarbrough") is a Michigan resident who worked for Defendant as a CSR at its PNC Customer Care Center in Kalamazoo, Michigan from March 2013 to March 2018. Defendant compensated Plaintiff Yarbrough through the payment of an hourly wage, most recently at the rate of $13.39 per hour, plus nondiscretionary incentive pay. Plaintiff Yarbrough signed a consent form to join this collective action lawsuit,

attached hereto as Exh. D.

27.     Defendant THE PNC FINANCIAL SERVICES GROUP, INC. is a Pennsylvania

Corporation (Entity Number: 754401) with its principal executive offices located at The Tower at

PNC Plaza, 300 Fifth Avenue, Pittsburgh, Pennsylvania 15222-2401.

28.     According to business news website Bloomberg.com,

> The PNC Financial Services Group, Inc. operates as a diversified financial services
> company in the United States and internationally. The company operates through
> four segments: Retail Banking, Corporate & Institutional Banking, Asset
> Management Group, and BlackRock. The Retail Banking segment offers deposit,
> lending, brokerage, and investment and cash management services to consumer and
> small business customers through a network of branches, ATMs, call centers, and
> online banking and mobile channels.

https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=294585 (last visited

on January 17, 2019); *see also* Exh. A, at 2 ("Our customers are serviced through our branch

network, ATMs, call centers, online banking and mobile channels.").

29.     Upon information and belief, Defendant has employed hundreds of CSRs—

including Plaintiffs—throughout the United States in the last three years to perform services which

include taking inbound calls to provide customer service support to those who contact the PNC

Customer Care Center.

## **GENERAL ALLEGATIONS**

30.     Defendant employed Plaintiffs as CSRs at the PNC Customer Care Center in

Kalamazoo, Michigan within the last three years. In that position, Plaintiffs were compensated

pursuant to an hourly wage, plus nondiscretionary incentive pay, and typically worked five days

and up to 40 or more hours per week.

31.     Throughout their employment with Defendant, Plaintiffs were required to work a

substantial amount of unpaid time, including overtime, as part of their jobs as CSRs.

32.     Defendant's CSRs are responsible for, among other things: (a) booting up their

6

computers and logging into several essential computer software programs and applications before fielding phone calls; (b) taking inbound calls to provide customer service support to those who contact the PNC Customer Care Center; (c) ensuring that every inbound call is accounted for in Defendant's computer systems; and (d) logging out of the computer software programs and applications and shutting down their computers.

33.     Defendant requires its CSRs to work rigid schedules, usually consisting of at least eight hours per day and five days per week, resulting in overtime hours on a weekly basis.

34.     Defendant has strict expectations that its CSRs will remain on the phone during scheduled meal breaks if there are not enough CSRs to cover the phones, if the call center experiences high call volume, or if the CSR is stuck on the phone with a customer; and Defendant threatens discipline if a CSR fails to do so.

35.     Defendant requires its CSRs to record their hours worked during each shift but prohibits its CSRs from recording time spent performing pre-shift, mid-shift and post-shift work tasks. Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

36.     Defendant uses a number of titles to refer to CSRs, including but not limited to: Call Center Business Banking Service Representative, Credit Card Customer Service & Support Representative, Customer Service and Support Representative, Customer Service Representative, and Customer Service & Support Representative.

37.     No matter the job title, CSRs' job responsibilities and duties are substantially similar, namely, taking inbound calls to provide customer service support to those who contact the PNC Customer Care Center.

38.     Upon information and belief, all CSRs are and were hourly, non-exempt

employees.

39.    Defendant's CSRs use the same or substantially similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

40.    Defendant's CSRs receive substantially the same training, are subject to the same disciplinary policies, and are subject to quality assurance reviews based on the same or similar criteria.

41.    Defendant expressly instructs and trains CSRs to have all their computer networks, software programs and applications open and ready at the start of their scheduled shifts and before they change their status to "Aux In" to receive incoming calls.

42.    Defendant enforces this policy through its quality assurance grading system.

43.    Defendant's Quality Assurance Team ("QAT") monitors and uses a point system to grade CSRs' calls.

44.    Defendant's quality assurance grading system is comprised of various performance metrics, including adherence (logging into the phone system and being ready to take calls promptly at the start of your scheduled shift and at the end of your scheduled meal and rest breaks) and efficiency (CSRs are expected to resolve customer calls within five minutes or less).

45.    If CSRs are not logged into the phone system and ready to take calls promptly at the start of their scheduled shifts or at the end of their scheduled meal and rest breaks, they are considered "out of adherence."

46.    CSRs who are "out of adherence" are subject to penalties and disciplinary action, including but not limited to: written and verbal reprimands, suspension, demotion or termination.

47.     CRS are graded according to numerous other performance indicators, which measure their ability to adhere to mandatory protocol.

48.     For example, before a CSR can service a customer, they are required to verify the customer's identity by asking security questions. If the CSR fails to verify the customer's identity, they are marked down by the QAT. As a result, CSRs need to have all of their work applications up and running to avoid a mark down.

49.     The maximum hold time permitted by Defendant is one to two minutes per hold. If the CSR places a customer on hold for longer than one to two minutes without checking back in with the customer, they are marked down by the QAT.

50.     CSRs must achieve a satisfactory score for each performance indicator, otherwise they are ineligible for bonuses, incentive pay or promotions.

51.     These policies reinforce that CSRs are required to have all computer networks, software programs and applications open and ready at the time they change their status to "Aux In."

52.     Defendant uses the computer software program "Pathfinder" to track CSRs' hours worked for purposes of compensation.

53.     However, because Defendant fails to accurately record its CSRs' work time, Defendant's compensation system fails to properly account for and compensate CSRs for all time worked, including their overtime hours, during each day and during each workweek.

54.     The hours reflected on the CSRs' pay stubs are not accurate, are contrived by Defendant, and are not related to the hours the CSRs actually worked for Defendant. This is because Defendant requires its CSRs to perform compensable work tasks before and after their shifts and during their unpaid meal periods but prohibits them from recording this time in

Pathfinder.

55.    As a result of Defendant's compensation policy, Plaintiffs and all other CSRs are deprived of pay for compensable time worked, including overtime.

**A.    Pre-Shift Off-the-Clock Work**

56.    In addition to their regularly scheduled shifts, Defendant's CSRs perform pre-shift work tasks that go uncompensated. Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to start up and log into various secure computer programs, software programs and applications in order to access information and software. The pre-shift startup and login process takes substantial time on a daily basis, in the range of 15 minutes per shift, or even longer when technical issues arise. Before each shift and before fielding phone calls, CSRs must undertake the following essential work tasks in chronological order:

  a. Locate their workstation and turn-on/warm-up their computer.

  b. Log into Microsoft Windows using a username and password.

  c. Start-up and log into various computer software programs and applications that are utilized during their shifts and that are necessary before taking customer calls. These computer software programs and applications include but are not limited to: Mozilla Firefox (web browser), Knowledge Base (accessed through Mozilla Firefox and utilized by CSRs to retrieve critical information regarding Defendant's financial products and services), Microsoft Outlook (email system), Pathfinder (time and attendance software), Spirit (customer support software utilized by CSRs to assist customers and view their profiles), HAL (customer support software utilized by CSRs to assist credit card customers), and Catch (the phone system utilized by CSRs to process customer calls).

  d. Search for, read and respond to work-related emails, including important notices, work instructions and training updates.

  e. Change status in Catch to "Aux In" and begin receiving calls.

57.    This mandatory boot-up and login process is performed *before* the CSRs' scheduled shifts, as Defendant expressly instructs and trains its CSRs to have all their computer networks, software programs and applications open and ready at the start of their shifts to ensure they are

prepared to receive calls (*i.e.*, are "phone ready") at the moment their shifts begin. Consequently, CSRs are required to arrive to work approximately 15 minutes ahead of their scheduled shifts to complete the startup and login process.

58.     Defendant's CSRs are not compensated for this time because Defendant trains and instructs the CSRs to record a clock-in time that matches their scheduled start-of-shift time. If, however, the CSR is <u>not</u> on the phone with a customer at the start of their scheduled shift, the CSR must record a clock-in time that matches the time that they take their first customer call. For example, if a CSR's shift begins at 10:00 a.m. but the CSR takes their first customer call at 10:05, the CSR must record a start time of 10:05 on his or her electronic timesheet. This policy results in CSRs performing no less than 15 minutes of unpaid pre-shift work each and every day.

59.     The unpaid work performed prior to each shift by Plaintiffs and all other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**B.     <u>Meal-Period Off-the-Clock Work</u>**

60.     Defendant promises its CSRs one unpaid 30-minute meal period each shift. However, in reality, Defendant routinely requires CSRs to work through unpaid meal periods—or take them late—if there are not enough CSRs to cover the phones, if the call center experiences high call volume, or if the CSR is stuck on the phone with a customer.

61.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *<u>completely relieved</u>* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period.

A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

62.     Instead of complying with the law, Defendant does not provide CSRs with a bona fide meal period because it requires the CSRs to resume taking customer calls promptly at the end of their scheduled meal breaks, meaning that the CSRs must return to their computer stations prior to the end of their unpaid meal breaks to log back into the computer/software programs and applications necessary to take customer calls.

63.     The work performed by CSRs during their unpaid meal breaks ranges from 5 to 10 minutes per shift, or more, but CSRs are not paid for this time.

### C.     Post-Shift Off-the-Clock Work

64.     Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to log out of the essential computer software programs and applications utilized during their shifts and restart their computers. The post-shift logout and shutdown process takes substantial time on a daily basis with said time ranging from 2 to 3 minutes per shift but can take as long as 10 minutes if the CSR experiences technical problems with the computer, software or applications.

65.     Defendant's CSRs are not compensated for this time because Defendant trains and instructs the CSRs to record a clock-out time that matches their scheduled end-of-shift time, unless the CSR is stuck on the phone with a customer at the end of their shift, in which case the CSR must record a clock-out time that matches the time that they finish their last customer call. This policy results in CSRs performing no less than 2 to 3 minutes of unpaid post-shift work each and every day.

66.    The unpaid off-the-clock work performed subsequent to each shift by Plaintiffs and all other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**D.    Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies**

67.    An example of specific workweeks where Defendant failed to pay Plaintiffs all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) includes the following:

**Pay Period of 12/26/2016 to 01/08/2017**

- Plaintiff Yarbrough was paid at a rate of $13.39 per hour for her 80.00 regular hours and $20.09 per hour for 4.50 overtime hours.

- With unpaid pre-shift, meal-period, and post-shift time, in a range of 22 to 28 minutes per shift, at five shifts per week, Plaintiff Yarbrough should have been paid an additional 220-280 minutes at her overtime rate of $20.09 during the pay period.

Exh. E, Yarbrough Pay Stub.

**E.    Defendant Failed to Include All Remuneration When Calculating CSRs' Regular Rates of Pay**

68.    Under the FLSA, the "regular rate" at which an employee must be paid includes "all remuneration for employment paid to, or on behalf of, the employee, divided by hours worked in a workweek." 29 U.S.C. § 207(e). While this rule has exceptions, none is relevant here. *See* 29 U.S.C. § 207(e)(1)-(8).

69.    29 C.F.R. § 778.211(c) states, in pertinent part,

Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made … must be included in the regular rate of pay.

70.    Defendant compensates its CSRs through the payment of an hourly wage, plus

13

nondiscretionary incentive pay, but does not factor this nondiscretionary incentive pay into the calculation of the CSRs' regular rate of pay for all hours worked in a pay period.

71.    This nondiscretionary incentive pay should in fact have been included in the calculation of Plaintiffs' and all other CSRs' regular rates of pay for overtime purposes, but was not. Consequently, CSRs are not paid at the correct overtime rate.

72.    Upon information and belief, all CSRs employed by Defendant are paid in the same manner.

### F.    Defendant Benefitted from the Uncompensated Off-the-Clock Work

73.    At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift, meal-period and post-shift activities performed by CSRs.

74.    At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of its CSRs.

75.    At all relevant times, Defendant was able to track the amount of time CSRs spent in connection with the pre-shift, meal-period and post-shift activities. However, Defendant failed to do so and failed to compensate CSRs for the off-the-clock work they performed.

76.    At all relevant times, CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

77.    At all relevant times, Defendant used its attendance and adherence policies against the CSRs in order to pressure them into performing the pre-shift, meal-period and post-shift off-the-clock work.

78.    Defendant expressly trained and instructed CSRs to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take

calls (i.e., were "phone ready") at the moment their shifts began.

79.     At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift, meal-period and post-shift activities they performed. Because Defendant's CSRs typically worked 40 hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

80.     Defendant knew or should have known that the time spent by CSRs in connection with the pre-shift, meal-period and post-shift activities was compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

81.     Despite knowing CSRs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

82.     Unpaid wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half their regular hourly rate because CSRs regularly worked in excess of 40 hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

83.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former CSRs who worked for Defendant at its brick-and-mortar call center facilities at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

84.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CSRs.

85.    Excluded from the proposed FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

86.    Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond 40 hours in a workweek.

87.    Defendant assigned and/or was aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

88.    As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

    a.    Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of 40 hours per workweek; and

    b.    Willfully failing to record all of the time that its employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant.

89.    Defendant is aware or should have been aware that federal law required it to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of 40 per workweek.

90.    Defendant's unlawful conduct has been widespread, repeated and consistent.

91.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar

job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

92.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location and rate of pay. The key issues - the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut-down/log-out time owed to each employee - do not vary substantially among the proposed FLSA Collective members.

93.     Many similarly situated current and former CSRs have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

94.     Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

95.     Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

96.     Plaintiffs estimate the proposed FLSA Collective, including both current and former employees over the relevant period, will include several hundred, if not thousands, of workers. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

97.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> *All current and former CSRs who worked for Defendant at its brick-and-mortar call center facilities at any time during the applicable statutory period*.

(hereinafter referred to as the "Rule 23 Class"). Plaintiffs reserve the right to amend the putative

class definition if necessary.

98.    The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds, if not thousands, of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

99.    There is a well-defined community of interest among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions include, but are not limited to, the following:

    a.    Whether the time Rule 23 Class members spent on pre-shift, mid-shift and post-shift off-the-clock work activities is compensable time;

    b.    Whether Rule 23 Class members are owed wages for time spent performing off-the-clock work activities, and, if so, the appropriate amount thereof; and

    c.    Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract and/or unjust enrichment.

100.    Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Class members.

101.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

102.    A class action is superior to other available methods for the fair and efficient

adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

103.    This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

104.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

105.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

106.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

107.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

108.    At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

109.    Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

110.    Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

111.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

112.    At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than 22 to 28 minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

113.    The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective is an essential part of their jobs, and these activities and the time associated with these activities are not *de minimis*.

114.    In workweeks where Plaintiffs and other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

115.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

116.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act,

an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

### COUNT II
### (Rule 23 Nationwide Class Action)
### BREACH OF CONTRACT

117.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

118.    At all times relevant to this action, Defendant had a contract with Plaintiffs and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate.

119.    Each Rule 23 Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

120.    Plaintiffs and every other Rule 23 Class member performed under the contracts by doing their jobs and carrying out the off-the-clock activities that Defendant required or accepted.

121.    By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for all of the work they performed each shift, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Class.

122.    Plaintiffs' and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure gap time claims).

123.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an employer's job.

124.    As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiffs and every other member of the Rule 23 Class have been damaged, in an amount to be determined at trial.

**COUNT III**
**(Rule 23 Nationwide Class Action)**
**UNJUST ENRICHMENT**

125.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

126.    This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

127.    At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Class members performed for the benefit of Defendant.

128.    Plaintiffs and every other Rule 23 Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

129.    By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the pre-shift, mid-shift and post-shift off-the-clock work they performed each shift, Defendant was unjustly enriched.

130.    Plaintiffs and the Rule 23 Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

131.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Class member and enjoyed the benefits derived therefrom.

132.    Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Class member to finance its various business ventures or pay its equity owners.

133.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Class for the same.

134.    Plaintiffs and the Rule 23 Class suffered detriment due to Defendant's failure to

compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23

Class were deprived of the ability to utilize that time, effort and their resources in a profitable

manner.

135.    As a direct and proximate result of Defendant's actions, Plaintiffs and every other

Rule 23 Class member suffered damages, including but not limited to, loss of wages.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the putative FLSA

Collective and Rule 23 Class, request judgment as follows:

a.  Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.  Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims (Counts II and III);

c.  Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

d.  Designating Plaintiffs as the representatives of the FLSA collective action Class and the Rule 23 Class, and undersigned counsel as Class counsel for the same;

e.  Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

f.  Declaring Defendant's violation of the FLSA was willful;

g.  Declaring Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

h.  Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class and the Rule 23 Class the full amount of damages and liquidated damages available by law;

i.  Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

j.      Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

k.      Awarding such other and further relief as this Court deems appropriate.

### **JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by and through their

attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure

and the court rules and statutes made and provided with respect to the above-entitled cause.

Respectfully Submitted,

Dated: February 12, 2019

/s/ Matthew L. Turner
Matthew L. Turner (P48706)
Rod M. Johnston (P80337)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, MI 48076
Phone: (248) 355-0300
Email: mturner@sommerspc.com
Email: rjohnston@sommerspc.com

*Attorneys for Plaintiffs and the*
*Putative Collective/Class Members*